KAREN P. HEWITT
United States Attorney
PETER J. MAZZA
Assistant United States Attorney
California Bar No. 239918
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone:  (619) 557-5528

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  07-CR-3415-DMS |
| | ) | |
| Plaintiff, | ) | DATE: January 25, 2008 |
| | ) | TIME:  11:00 a.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE TO |
| MARTIN MORALES | ) | DEFENDANTS' MOTIONS FOR |
| LOZANO VARGAS (3), | ) | DISCOVERY AND FOR |
| JESUS TRAPERO-ZAZUETA (4), | ) | LEAVE TO FILE ADDITIONAL |
| ADAN MAGANA, JR. (5), | ) | MOTIONS AND DEFENDANT |
| | ) | TRAPERO-ZAZUETA'S MOTION TO |
| | ) | SUPPRESS STATEMENTS |
| | ) | |
| Defendants. | ) | |
| | ) | TOGETHER WITH A STATEMENT |
| | ) | OF FACTS AND A MEMORANDUM |
| | ) | OF POINTS AND AUTHORITIES |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Peter J. Mazza, Assistant United States Attorney, and hereby files its response to the motions to compel discovery and for leave to file additional motions filed by Defendants Martin Morales Lozano Vargas, Jesus Trapero-Zazueta, and Adan Magana, Jr., as well as Defendant Trapero-Zazueta's motion to suppress.  Said response is based upon the files and records of this case, together with the attached statement of facts and accompanying memorandum of points and authorities.

//

//

# I

# STATEMENT OF THE CASE

## A.     THE CHARGE

On December 19, 2007, a grand jury sitting in the Southern District of California returned a one-count Indictment against Defendants, charging them with possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On December 20, 2007, Defendant was arraigned on the Indictment.

## B.     STATUS OF DISCOVERY

On January 2, 2008, the Government produced approximately 120 pages of written discovery to all Defendants. On that same day, an additional 12 pages was made available to Defendant Lozano-Vargas, an additional three pages to Defendant Trapero-Zazueta, and an additional 11 pages to Defendant Magana. The documents that have been produced constitute all discoverable material that the Government has to date, and includes, inter alia: (1) investigative reports; (2) Defendants' criminal histories; (3) documents seized from Defendants' vehicle; and (4) photographs taken throughout the investigation.

# II

# STATEMENT OF FACTS

During the day on December 8, 2007, Border Patrol agents were conducting routine surveillance duties around the area of the Midway Campground, which is in the area of the Imperial Sand Dunes. Throughout the course of the day, Border Patrol Agent Tyler Emblem observed activity at the Midway Campground that he felt was suspicious based on his training and experience. Specifically, Agent Emblem observed that several individuals camping in the area of a rental motor home had positioned their other vehicles in a "V" shape, which effectively blocked the view into their camping area. Agent Emblem also recognized one of the off-road vehicles parked in the area of this group as one that fit the description of a sand buggy that had previously been reported by citizens as a possible drug smuggling vehicle. At approximately 11:30 a.m., Drug

07CR3415-DMS

2

1  Enforcement Administration (DEA) Task Force Officer (TFO) Craig Moore and Bureau of Land

2  Management (BLM) Special Agent Clark established stationary surveillance of the suspicious

3  campground.  As agents conducted surveillance of the group throughout the afternoon, they noticed

4  that several individuals entered the camp and left shortly thereafter.  They further noticed several

5  members of the group going to the outhouse for extended periods of time.

6     At approximately 8:10 p.m., agents observed one of the all terrain vehicles (ATVs)

7  associated with the group depart from the campground with its headlights off.  The ATV left in a

8  southerly direction toward the United States/Mexico international boundary that is approximately

9  one mile south of the campground.  At approximately 8:20 p.m., agents observed an individual

10  later identified as Defendant Trapero-Zazueta extinguish the campfire, while another individual

11  later identified as Defendant Lozano-Vargas left the campground with his headlights off.

12     At approximately 8:30 p.m., Defendant Lozano-Vargas returned to the campground on an

13  ATV without the headlights on.  Shortly thereafter, agents utilizing night-vision equipment,

14  observed several other individuals on ATVs driving from the south toward the campground

15  without using the headlights on their vehicles.  Agents observed that these ATVs also had large

16  bundles attached to them.  Based on these observations, and their individual training and

17  experiences, agents suspected that the group to be conducting narcotics-related activities.

18     At the campground, Ranger Swanson observed the ATVs unload the bundles onto a flatbed

19  trailer at the direction of Defendant Lozano-Vargas.  After the bundles were loaded onto the

20  flatbed trailer, the ATVs departed the campground with their headlights activated.  Ranger

21  Swanson then observed individuals later identified as Defendants Trapero-Zazueta, Lozano-

22  Vargas, and Christian Maria Rodriguez transferring the bundles from the flatbed trailer to the area

23  of the motor home.  The flatbed trailer was hooked up to the motor home.  During the transfer of

24  the bundles, agents noticed Defendant Magana appear to be serving as a lookout for the group.  He

25  would alternate between watching over the transfer of the bundles and look out in the direction of

26

27

28

07CR3415-DMS

3

1    other campgrounds.  Once the bundles were removed from the trailer, Defendant Trapero-Zazueta

2    relit the campfire.

3         At approximately 11:50 p.m., agents approached the area of the motor home.  As they

4    neared, they made contact with Defendant Rodriguez who was seated in the driver's seat of the

5    motor home.  Defendant Rodriguez exited the motor home and informed agents that there were

6    more individuals still inside.  Agents and officers instructed all remaining individuals to exit the

7    motor home.  Only Defendants Defendants Trapero-Zazueta and Lozano-Vargas responded by

8    exiting the motor home.  Officers then called out a second time, and Defendant Magana exited.

9    Officers called out a third time for remaining occupants to exit the motor home, and Defendant

10   Vargas finally emerged from the motor home.  Fearing additional individuals may still be inside,

11   officers conducted a protective sweep of the motor home.

12        Upon entering the motor home, agents encountered an overwhelming odor of a masking

13   agent and marijuana.  As agents proceeded to sweep the rear area of the motor home, they noticed

14   in plain view, several large bundles in the shower area.  Agents noticed in plain view several

15   additional bundles stacked immediately next to the bed in the rear sleeping quarters.  The bundles

16   were approximately 2' x. 1.5' wide and approximately 10" deep.  They were painted black, and

17   wrapped in cellophane plastic and aluminum foil.  Based on their training and experiences, officers

18   and agents at the scene recognized these bundles to be consistent with those frequently used to

19   conceal narcotics.

20        Once the agents exited the motor home, Defendant Rodriguez spontaneously stated that her

21   mother had rented the motor home and she wanted to know "what was going on."  Subsequent

22   checks revealed the motor home was rented to Defendant Vargas on December 7, 2007, in Indio,

23   California.  The five individuals were taken into custody.

24        A subsequent search of the vehicle revealed 47 bundles that contained approximately

25   382.08 kilograms (842.40 pounds).  Field tests revealed that the bundles contained marijuana.

26

27

28                                                            07CR3415-DMS

On December 9, 2007, at approximately 12:15 a.m., DEA Special Agent Jeff Butler informed Defendant Trapero-Zazueta of his Miranda rights in Spanish pursuant to a pre-printed DEA form. Defendant Trapero-Zazueta agreed to speak with agents without the presence of an attorney. Defendant Trapero-Zazueta stated that he resided in Indio, California, and was in the United States illegally. He claimed he was asleep in the back of the motorhome with a friend, and was unaware the motor home contained marijuana. Defendant Trapero-Zazueta claimed that he had traveled to the sand dunes with a friend who he did not know by name in order to ride ATVs.

At approximately 12:37 a.m., Federal Bureau of Investigation Special Agent Ronald Ribail advised Defendant Vargas of her Miranda rights as set forth on a standard Advice of Rights form used by the FBI. Defendant Vargas waived her Miranda rights and agreed to make a statement without an attorney present. Defendant Vargas stated that she rented the motor home on December 7. 2007 in Indio, California. She said her grandson, Defendant Lozano-Vargas, and his friend, "Adam," traveled with her to rent the vehicle. Defendant Vargas stated that they were being followed by an unidentified male driving a black truck. She stated that after renting the motor home, they drove it to Calexico, California where they met with two other unidentified males who helped her grandson hook up the flatbed trailer to the motor home. They then drove to the campground. She said that she slept on and off throughout the day on Saturday, December 8, 2007. She stated that when law enforcement arrived at their campground, she was sleeping on the couch near the door of the motor home. She stated that she had moved around the motor home for much of the day and night, and specifically mentioned that she used the bathroom at approximately 9:00 p.m. Defendant Vargas denied observing any marijuana or other large packages in the motor home at any time. She stated she did not know how they got in the motor home. She noted that the motorhome did not contain marijuana when she rented it on Friday, December 7, 2007.

At approximately 12:37 a.m., Agent Butler advised Defendant Rodriguez of her Miranda rights from a pre-printed DEA form in English. Defendant Rodriguez responded "what questions" when asked whether she was willing to answer some questions from agents. She informed agents

07CR3415-DMS

1    that, while she was allowed to drive the vehicle, her name was not on the rental agreement.  She

2    then invoked her right to counsel, and the interview ceased.

3        At approximately 12:50 a.m., Agent Butler informed Defendant Lozano-Vargas of his

4    <u>Miranda</u> rights in English from a pre-printed DEA form.  Defendant Lozano-Vargas agreed to

5    answer questions without an attorney present.  He stated that the other occupants of the motor

6    home arrived at the campground on Friday night, December 7, 2007.  Defendant Lozano-Vargas

7    admitted that he was watching for Border Patrol agents and other law enforcement, and that when

8    he would see law enforcement, he would notify his friends.  He stated that he expected to be paid

9    approximately $200 over the weekend.  Defendant Lozano-Vargas further informed agents that he

10    had traveled to Indio, California with Defendant Trapero-Zazueta in the black truck, but that he

11    did not know Defendant Trapero-Zazueta well.  Defendant Lozano-Vargas stated that he came to

12    the sand dunes at the invitation of Defendant Rodriguez.  He stated that he did not know the

13    individuals who had arrived at the campground earlier in the evening on the ATVs.  He further

14    denied knowing there was marijuana in the motor home.  Finally, Defendant Lozano-Vargas

15    informed agents that he did not wish to answer any more questions without the presence of his

16    grandmother, Defendant  Vargas.  Agents did not ask any more questions.

17        At approximately 1:10 a.m., Agent Butler read Defendant Magana his <u>Miranda</u> rights from

18    a pre-printed DEA form.  Defendant Magana immediately invoked his right to remain silent.

19    Agents did not ask Defendant Magana any questions.

20                                    **III**

21                            **POINTS AND AUTHORITIES**

22        **A.    DISCOVERY**

23        In an attempt at simplification, this memorandum will address two specific areas of

24    discovery:  (1) items which the Government either has provided or will voluntarily provide; and

25    (2) items demanded and discussed by Defendants which go beyond the strictures of Rule 16 and

26    are not discoverable.

27

28                                    6

07CR3415-DMS

### 1.  Items Which The Government Has Already Provided Or Will Voluntarily Provide

a.     The Government will disclose to Defendants and make available for inspection, copying or photographing:  any relevant written or recorded statements made by Defendants, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendants whether before or after arrest in response to interrogation by any person then known to Defendants to be a Government agent.  The Government will also disclose to Defendants the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendants to be a Government agent if the Government intends to use that statement at trial.

b.     The Government will permit Defendants to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of Defendants' defenses or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendants;[1]

c.     The Government will permit Defendants to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the

---

[1]     Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 116 S. Ct. 1480 (1996).  Further, Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal.  United States v. Givens, 767 F.2d 574 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

07CR3415-DMS

attorney for the Government, and which are material to the preparation of their defenses or are intended for use by the Government as evidence during its case-in-chief at trial;[2]

      d.    The Government has furnished to Defendants a copy of their prior criminal records, which is within its possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government;

      e.    The Government will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into;

      f.    The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[3]

      g.    The Government will disclose any record of prior criminal convictions that could be used to impeach a Government witness prior to any such witness' testimony;

      h.    The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of Defendants that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;

---

[2]    The Government does not have "to disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519 (9th Cir. 1989), cert. denied, 493 U.S. 1088 (1990).

[3]    Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir.), cert. denied, 454 U.S. 902 (1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978), cert. denied, 440 U.S. 921 (1979); United States v. Walk, 533 F.2d 417, 418-419 (9th Cir. 1975). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

07CR3415-DMS

1        i.      The Government acknowledges and recognizes its continuing

2   obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373

3   U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Jencks and Rules 12 and 16 of the

4   Federal Rules of Criminal Procedure, and will abide by their dictates.[4/]

5        **2.      Items Which Go Beyond The Strictures Of Rule 16**

6        **a.      The Requests By The Defendants For Specific**
         **Brady Information Or General Rule 16**
7        **Discovery Should Be Denied**

8        Defendants requests that the Government disclose all evidence favorable to them, which

9   tends to exculpate them, or which may be relevant to any possible defense or contention they might

10  assert.

11       It is well-settled that prior to trial, the Government must provide a defendant in a criminal

12  case with evidence that is both favorable to the accused and material to guilt or punishment.

13  Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady

14  v. Maryland, 373 U.S. 83, 87 (1963).  As the Court explained in United States v. Agurs, 427 U.S.

15  97, 104 (1976), "a fair analysis of the holding in Brady indicates that implicit in the requirement

16  of materiality is a concern that the suppressed evidence may have affected the outcome of the

17  trial."  Thus, under Brady, "evidence is material only if there is a reasonable probability that, had

18  the evidence been disclosed to the defense, the result of the proceeding would have been different."

19  United States v. Bagley, 473 U.S. 667, 682 (1985) (emphasis added).  A "reasonable probability"

20  is a probability sufficient to undermine confidence in the outcome.  Pennsylvania v. Richie, 480

21  U.S. at 57 (quoting United States v. Bagley, 473 U.S. at 682).

22

23       [4/]      Brady v. Maryland requires the Government to produce all evidence that is material
24  to either guilt or punishment.  Brady v. Maryland, 373 U.S. 83 (1963).  The Government's failure
    to provide the information required by Brady is constitutional error only if the information is
25  material, that is, only if there is a reasonable probability that the result of the proceeding would
    have been different had the information been disclosed.  Kyles v. Whitley, 115 S. Ct. 1555 (1995).
26  However, neither Brady nor Rule 16 require the Government to disclose inculpatory information
    to the defense.  United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993).
27

28                                  9

1

2    The Supreme Court has repeatedly held that the <u>Brady</u> rule is not a rule of discovery;

3    rather, it is a rule of fairness and is based upon the requirement of due process. <u>United States v.</u>

4    <u>Bagley</u>, 473 U.S. at 675, n. 6; <u>Weatherford v. Bursey</u>, 429 U.S. at 559; <u>United States v. Agurs</u>, 427

5    U.S. at 108. The Supreme Court's analysis of the limited scope and purpose of the <u>Brady</u> rule, as

6    set forth in the <u>Bagley</u> opinion, is worth quoting at length:

7        Its purpose is not to displace the adversary system as the primary means by which truth is
         uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted].

8        Thus, the prosecutor is not required to deliver his entire file to defense counsel,[5] but only
         to disclose evidence favorable to the accused that, if suppressed, would deprive the

9        defendant of a fair trial: "For unless the omission deprived the defendant of a fair trial,
         there was no constitutional violation requiring that the verdict be set aside; and **absent a**

10       **constitutional violation, there was no breach of the prosecutor's constitutional duty
         to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his**

11       **constitutional duty of disclosure unless his omission is of sufficient significance to
         result in the denial of the defendant's right to a fair trial."**

12   <u>United States v. Bagley</u>, 473 U.S. at 675 (quoting <u>United States v. Agurs</u>, 427 U.S. at 108)

13   (emphasis added); <u>see also</u> <u>Pennsylvania v. Richie</u>, 480 U.S. at 59 ("A defendant's right to discover

14   exculpatory evidence does not include the unsupervised authority to search through the

15   Commonwealth's files."). Accordingly, the Government in this case will comply with the <u>Brady</u>

16   mandate but rejects any affirmative duty to create or seek out evidence for the defense.

17          **b.    Defendants' Motions For Disclosure Of Witness
                    Information Should Be Denied Except As Is
                    Agreed To By The Government**

18

19    Defendants seek numerous records and information pertaining to potential Government

20   witnesses. Regarding these individuals, the Government will provide Defendants with the

21   following items prior to any such individual's trial testimony:

22

23          [5]    See <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976); <u>Moore v. Illinois</u>, 408 U.S.
     786, 795 (1972). <u>See also</u> <u>California v. Trombetta</u>, 467 U.S. 479, 488, n. 8 (1984). An

24   interpretation of <u>Brady</u> to create a broad, constitutionally required right of discovery "would
     entirely alter the character and balance of our present system of criminal justice." <u>Giles v.</u>

25   <u>Maryland</u>, 386 U.S. 66, 117 (1967) (Harlan, J., dissenting). Furthermore, a rule that the prosecutor
     commits error by any failure to disclose evidence favorable to the accused, no matter how

26   insignificant, would impose an impossible burden on the prosecutor and would undermine the
     interest in the finality of judgements.

27

28                                                          07CR3415-DMS

                                        10

1      (1)      The terms of all agreements (or any other inducements) it has

2      made with cooperating witnesses, if they are entered into;

3      (2)      All relevant exculpatory evidence concerning the credibility

4      or bias of Government witnesses as mandated by law; and,

5      (3)      Any record of prior criminal convictions that could be used

6      to impeach a Government witness.

7      The Government opposes disclosure of rap sheet information of any Government witness

8      prior to trial because of the prohibition contained in the Jencks Act. See United States v. Taylor,

9      542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977). Furthermore, any

10     uncharged prior misconduct attributable to Government witnesses, all promises made to and

11     consideration given to witnesses by the Government, and all threats of prosecution made to

12     witnesses by the Government will be disclosed if required by the doctrine of Brady v. Maryland,

13     373 U.S. 83 (1963) and Giglio v. United States, 450 U.S. 150 (1972).

14                          **c.      The Rough Notes Of Our Agents**

15     Although the Government has no objection to the preservation of agents' handwritten notes,

16     we object to their production at this time. Further, the Government objects to any pretrial hearing

17     concerning the production of rough notes. If during any evidentiary proceeding, certain rough

18     notes become relevant, these notes will be made available.

19     Prior production of these notes is not necessary because they are not "statements" within

20     the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a

21     witness' assertions and they have been approved or adopted by the witness. United States v.

22     Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980); see also United States v. Kaiser, 660 F.2d 724,

23     731-32 (9th Cir. 1981); United States v. Griffin, 659 F.2d 932, 936-38 (9th Cir. 1981).

24                          **d.      Government Reports, Summaries, And Memoranda**

25     Rule 16, in pertinent part, provides:

26     [T]his rule does not authorize the discovery or inspection of reports, memoranda,
       or other internal government documents made by the attorney for the government

27

28

07CR3415-DMS

11

1 | or other government agent in connection with the investigating or prosecuting of
the case.

Rule 16(a)(2); see also United States v. Sklaroff, 323 F. Supp. 296, 309 (S.D. Fla. 1971), and cases cited therein (emphasis added); United States v. Garrison, 348 F. Supp. 1112, 1127-28 (E.D. La. 1972).

The Government, as expressed previously, recognizes and embraces its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 450 U.S. 150 (1972), Rule 16, and the Jencks Act.[6] We shall not, however, turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[7] Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

**e.    Defendants Are Not Entitled To Addresses
Of Government Witnesses**

While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses or telephone numbers. See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980), and United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). A request for the home addresses of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list

---

[6]    Summaries of witness interviews conducted by Government agents (DEA 6, FBI 302) are not Jencks Act statements. United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985). The production of witness interview is addressed in more detail below.

[7]    The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

07CR3415-DMS

1  of the witnesses it expects to call at trial.  United States v. Thompson, 493 F.2d 305, 309 (9th Cir.),

2  cert. denied, 419 U.S. 835 (1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969).[8]

3       The Ninth Circuit addressed this issue in United States v. Jones, 612 F.2d 453 (9th Cir.

4  1979), cert. denied, 445 U.S. 966 (1980).  In Jones, the court made it clear that, absent a showing

5  of necessity by the defense, there should be no pretrial disclosure of the identity of Government

6  witnesses.  Id. at 455.  Several other Ninth Circuit cases have reached the same conclusion.  See,

7  e.g., United States v. Armstrong, 621 F.2d 951, 1954 (9th Cir. 1980); United States v.

8  Sukumolachan, 610 F.2d at 687; United States v. Paseur, 501 F.2d 966, 972 (9th Cir. 1974) ("A

9  defendant is not entitled as a matter of right to the name and address of any witness.").

10  ### f.  Motion Pursuant To Rule 12(d)

11       Defendants are hereby notified that the Government intends to use in its case-in-chief at

12  trial all evidence which Defendants are entitled to discover under Rule 16, subject to any relevant

13  limitations prescribed in Rule 16.

14  ### g.  Defendants' Motion For Disclosure Of
15  ### Oral Statements Made To Non-Government
### Witnesses Should Be Denied

16       Defendants are not entitled to discovery of oral statements made by them to persons who

17  were not - at the time such statements were made - known by the defendants to be Government

18  agents.  The plain language of Rule 16 supports this position.  Rule 16 unambiguously states that

19  defendants are entitled to "written and recorded" statements made by them.  The rule limits

20  discovery of oral statements to "that portion of any written record containing the substance of any

21  relevant oral statement made by the defendant whether before or after arrest in response to

22   

23      [8]     Even in a capital case, the defendant is only entitled to receive a list of witnesses three days prior to commencement of trial.  18 U.S.C. § 3432.  See also United States v. Richter,

24  488 F.2d 170 (9th Cir. 1973)(holding that defendant must make an affirmative showing as to need and reasonableness of such discovery).  Likewise, agreements with witnesses need not be turned

25  over prior to the testimony of the witness, United States v. Rinn, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation to turn over the criminal records of all witnesses.  United States v.

26  Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Egger, 509 F.2d 745 (9th Cir.), cert.

27  denied, 423 U.S. 842 (1975); United States v. Cosby, 500 F.2d 405 (9th Cir. 1974).

28   

07CR3415-DMS

1    interrogation by any person then known to the defendant to be a Government agent," and "the

2    substance of any other relevant oral statement made by the defendant whether before or after arrest

3    in response to interrogation by any person then known by the defendant to be a Government agent

4    if the Government intends to use that statement at trial." The statutory language clearly means that

5    oral statements are discoverable only in very limited circumstances, and then, only when made to

6    a known Government agent.

### h.    Personnel Files Of Federal Agents

8    Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v.

9    Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its

10   federal law enforcement witnesses and to "disclose information favorable to the defense that meets

11   the appropriate standard of materiality . . . ." United States v. Cadet, 727 F.2d at 1467-68. Further,

12   if counsel for the United States is uncertain about the materiality of the information within its

13   possession, the material will be submitted to the court for in-camera inspection and review. In this

14   case, the Government will ask the affected law enforcement agency to conduct the reviews and

15   report their findings to the prosecutor assigned to the case. In United States v. Jennings, 960 F.2d

16   1488 (9th Cir. 1992), the Ninth Circuit held that the Assistant U.S. Attorney assigned to the

17   prosecution of the case has no duty to personally review the personnel files of federal law

18   enforcement witnesses. In Jennings, the Ninth Circuit found that the present Department of Justice

19   procedures providing for a review of federal law enforcement witness personnel files by the agency

20   maintaining them is sufficient compliance with Henthorn. Jennings, 960 F.2d at 1492. In this

21   case, the Government will comply with the procedures as set forth in Jennings.

22   Finally, the Government has no duty to examine the personnel files of state and local

23   officers because they are not within the possession, custody or control of the Federal Government.

24   United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

25   //

### i.    Reports Of Witness Interviews

07CR3415-DMS

28                                              14

1  Defendants have requested the production of all reports generated in connection with

2  witness interviews.  To date, the Government does not have any reports regarding witness

3  interviews or otherwise that have not been turned over to Defendant.  However, to the extent that

4  such additional reports regarding witness interviews are generated, the information sought by

5  Defendants is not subject to discovery under the Jencks Act, 18 U.S.C., Section 3500.  In Jencks

6  v. United States, 353 U.S. 657 (1957), the Supreme Court held that a criminal defendant had a due

7  process right to inspect, for impeachment purposes, statements which had been made to

8  government agents by government witnesses.  Such statements were to be turned over to the

9  defense at the time of cross-examination if their contents related to the subject matter of the

10  witness' direct testimony, and if a demand had been made for specific statements of the witness.

11  Id. at 1013-15.  The Jencks Act, 18 U.S.C., Section 3500, was enacted in response to the Jencks

12  decision.  As the Supreme Court stated in an early interpretation of the Jencks Act:

13  Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative
14  process and thereby injure the national interest, but it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the
15  witness' own rather than the product of the investigator's selections, interpretations, and interpolations. The committee reports of the Houses and the floor debates clearly manifest
16  the intention to avoid these dangers by restricting the production to those statements defined in the bill.

17  Palermo v. United States, 360 U.S. 343, 350 (1959).  Having examined the legislative history and

18  intent behind enactment of the Jencks Act, the Court concluded, "[t]he purpose of the Act, its fair

19  reading and its overwhelming legislative history compel us to hold that statements of a government

20  witness made to an agent of the government which cannot be produced under the terms of 18

21  U.S.C. § 3500, cannot be produced at all."

22  Reports generated in connection with a witness's interview session are only subject to

23  production under the Jencks Act if the witness signed the report, or otherwise adopted or approved

24  the contents of the report.  See 18 U.S.C. § 3500(e)(1); see also  United States v. Miller, 771 F.2d

25  1219, 1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which

26  are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a

27

28

07CR3415-DMS

witnesses' oral statements."); <u>United States v. Friedman</u>, 593 F.2d 109, 120 (9th Cir. 1979) (an interview report that contains a summary of a witness' statements is not subject to discovery under the Jencks Act); <u>United States v. Augenblick</u>, 393 U.S. 248, 354-44 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness's own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." <u>United States v. Bobadilla-Lopez</u>, 954 F.2d 519, 522 (9th Cir. 1992). As recognized by the Supreme Court, "the [Jencks Act] was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital." <u>Id</u>. Defendants should not be allowed access to reports which they cannot properly use to cross-examine the Government's witnesses.

### j.    **Expert Witnesses**

The Government will disclose to Defendants the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

### k.    **Other Discovery Requests**

To the extent that the above does not answer all of Defendants' discovery requests, the Government opposes the motions on the grounds that there is no authority requiring us to provide such material.

### B.    **LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not oppose Defendants' request for leave to file further motions as long as the order grants reciprocal leave to file additional motions and that any new motions are based on newly discovered information.

//

//

07CR3415-DMS

1    C.    **DEFENDANT TRAPERO-ZAZUETA'S MOTIONS TO SUPPRESS SHOULD BE DENIED**

2

3        1.    Probable Cause Existed To Arrest Defendant Trapero-Zazueta

4        Defendant Trapero-Zazueta argues that agents did not have sufficient probable cause to

5    arrest him in relationship to this offense.  (Def. Trapero-Zazueta ("Def. #4") Mot. at 7-12.)

6    Specifically, Defendant Trapero-Zazueta claims that he was merely present at the scene, and such

7    mere presence, standing alone, is insufficient to justify his arrest.  (Id. at 7-8.)

8        Law enforcement officers can make warrantless arrests "if, at the time of the defendant's

9    arrest, police officers have probable cause to believe that an offense has been, is being, or will be

10   committed."  United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (9th Cir. 1990) (citing

11   Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Probable cause exists "when, under the totality of

12   circumstances known to the arresting officers, a prudent person would have concluded that there

13   was a fair probability" that a crime has, is being, or will be committed.  United States v. Buckner,

14   179 F.3d 834, 837 (9th Cir. 1999) (internal quotation marks omitted).  Because probable cause

15   largely turns on the totality of facts known to the officer, the standard is not amenable to

16   expression in percentages.  See Brinegar v. United States, 338 U.S. 160, 175 (1949).  The probable

17   cause standard is a "'practical, nontechnical conception' that deals with the factual and practical

18   considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

19   Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231

20   (1983)).  While the probable cause standard is not easily reduced to "neat set of legal rules," Gates,

21   462 U.S. at 232, the Supreme Court has repeatedly stated that "the substance of all the definitions

22   of probable cause is a reasonable ground for belief of guilt."  Brinegar, 338 U.S. at 175.

23       In multi-defendant situations, the Supreme Court has established a "joint and several"

24   theory of probable cause.  In Maryland v. Pringle, the Supreme Court held that police had probable

25   cause to arrest a front-seat passenger of a vehicle after finding cocaine in the back seat armrest,

26   even though there were three individuals in the car.  540 U.S. 366 (2003).  The Supreme Court

27

28                                  17

07CR3415-DMS

1    reasoned that since any or all of the three individuals had knowledge of, and dominion and control

2    over, the cocaine, a reasonable officer would had probable cause to believe the driver committed

3    the crime of possessing the cocaine. Id. at 371.

4            Despite Defendant Trapero-Zazueta's claim to the contrary, the facts and circumstances

5    surrounding his arrest were far greater than his mere presence at the campsite. First, Defendant

6    Trapero-Zazueta was the one who extinguished the fire early in the evening as the two ATVs left

7    the campgound with their headlights off and heading in a southerly direction. After observing the

8    ATVs carrying large bundles arrive at the campground from the south, Ranger Swanson observed

9    Defendant Trapero-Zazueta and others transferring the bundles from the flatbed trailer to the area

10   of the motorhome. Defendant Trapero-Zazueta was then seen by agents relighting the campfire

11   that they had earlier extinguished prior the arrival of the ATVs from the south. Defendant Trapero-

12   Zazueta's actions cannot be viewed in a vacuum. The simple fact that an innocent explanation may

13   be inferred from suspicious circumstances does not negate legitimate suspicion on the part of law

14   enforcement. See United States v. Arvizu, 534 U.S. 266, 277 (2002) (rejecting defendant's "divide

15   and conquer" approach of offering an innocent explanation for each fact relied upon to reach

16   probable cause determination); United States v. Berber-Tinoco, — F.3d —, 2007 WL 4410259,

17   *2 (9th Cir. Dec. 19, 2007). Thus, the cases Defendant Trapero-Zazueta cites that stand for the

18   proposition that an individual's mere presence near the scene of criminal activity, standing alone,

19   is not enough to establish probable cause is inapposite to the present matter. Agents and officers

20   observed Defendant Trapero-Zazueta intimately involved in suspected narcotics trafficking.

21   Accordingly, agents had probable cause to arrest Defendant Trapero-Zazueta.

22           **2.      Defendant Trapero-Zazueta's Motion to Suppress His Statements**

23           Defendant Trapero-Zazueta  moves to suppress any statements taken in violation of

24   Miranda v. Arizona, 396 U.S. 868 (1969) and claims that the Government must prove that

25   Defendant's waiver of his Miranda rights were voluntary, knowing and intelligent. First, the rights

26   given to Defendant were plain and unambiguous.

27

28                                                                                                07CR3415-DMS

1    Defendant Trapero-Zazueta's post-arrest statements are admissible because he knowingly,

2    intelligently, and voluntarily waived his <u>Miranda</u> rights. A statement made in response to custodial

3    interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966) and 18 U.S.C. § 3501

4    if a preponderance of the evidence indicates that the statement was made after an advisement of

5    rights, and was not elicited by improper coercion. <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70

6    (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations;

7    valid waiver of <u>Miranda</u> rights should be found in the "absence of police overreaching"). Although

8    the totality of circumstances, including characteristics of the defendant and details of the interview,

9    should be considered, improper coercive activity must occur for suppression of any statement. <u>See</u>

10    <u>id.</u> (noting that "coercive police activity is a necessary predicate to the finding that a confession

11    is not 'voluntary'"); <u>cf.</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973) ("Some of the

12    factors taken into account have included the youth of the accused; his lack of education, or his low

13    intelligence; the lack of any advice to the accused of his constitutional rights; the length of

14    detention; the repeated and prolonged nature of the questioning; and the use of physical

15    punishment such as the deprivation of food or sleep.") (citations omitted). While it is possible for

16    a defendant to be in such a poor mental or physical condition that they cannot rationally waive

17    their rights (and misconduct can be inferred based on police knowledge of such condition,

18    <u>Connelly</u>, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered

19    utterly incapable of rational choice. <u>See</u> <u>United States v. Kelley</u>, 953 F.2d 562, 564 (9th Cir.1992)

20    (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise

21    of rational choice).

22    Here, Defendant Trapero-Zazueta was properly advised of his <u>Miranda</u> rights following

23    arrest. Agent Butler read him his <u>Miranda</u> rights from a pre-printed card issued by the DEA in

24    Spanish. He acknowledged that he understood his rights and agreed to answer questions without

25    the presence of an attorney. Defendant Trapero-Zazueta makes no specific allegation of any

26    coercive conduct on the part of the interviewing officers. Neither does Defendant claim that his

27

28    

1    statements resulted from being intimidated, threatened, or coerced in any manner by the

2    interviewing officers.  Defendant fails to allege with any specificity that the <u>Miranda</u> advisal and

3    waiver were improper.  The totality of circumstances demonstrates that Defendant's post-arrest

4    statements were voluntary.  Defendant's Motion for a voluntariness hearing should be denied.

5               3.    **Defendant Trapero-Zazueta's Request For An Evidentiary Hearing
                      Should Be Summarily Denied For Failure To Comply With Local
6                     Criminal Rule 47.1(g)**

7         Under Ninth Circuit and Southern District precedent, as well as Southern District Local

8    Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to

9    suppress only when the defendant adduces specific facts sufficient to require the granting of the

10   defendant's motion.  <u>United States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he

11   defendant, in his motion to suppress, failed to dispute any material fact in the government's

12   proffer.  In these circumstances, the district court was not required to hold an evidentiary

13   hearing."); <u>United States v. Moran-Garcia</u>, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that

14   boilerplate motion containing indefinite and unsworn allegations was insufficient to require

15   evidentiary hearing on defendant's motion to suppress statements).  Specifically, Local Criminal

16   Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall be

17   supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where

18   either party fails to properly support its motion or opposition."  Here, Defendant Trapero-Zazueta

19   has failed to support his allegation with a declaration, in clear opposition to Local Rule 47.1(g).

20   The Ninth Circuit has held that a District Court may properly deny a request for an evidentiary

21   hearing on a motion to suppress evidence because the defendant did not properly submit a

22   declaration pursuant to a local rule.  <u>United States v. Wardlow</u>, 951 F.2d 1115, 1116 (9th Cir.

23   1991).

24        In addition, Defendant Trapero-Zazueta's allegations that officers lacked probable cause

25   in making his arrest and a <u>Miranda</u> violation occurred fail to demonstrate a disputed factual issue

26   requiring an evidentiary hearing.  Indeed, Defendant Trapero-Zazueta did not allege any facts to

27

28                                    07CR3415-DMS

1  support his claim that his statements were involuntary.  Therefore, an evidentiary hearing should

2  be denied.  See United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary

3  hearing on a motion to suppress need be held only when the moving papers allege facts with

4  sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested

5  issues of fact exist." (citation omitted).  See also Batiste, 868 F.2d at 1092 (stating that

6  Government proffer alone is adequate to defeat a motion to suppress where the defense fails to

7  adduce specific and material disputed facts).

8                                              **IV**

9                                     **CONCLUSION**

10         For the foregoing reasons, the Government requests that Defendant's motions be denied

11  where indicated.

12         DATED: January 18, 2008.

13                                                         Respectfully submitted,

14                                                         KAREN P. HEWITT
                                                           United States Attorney
15

16                                                         s/ Peter J. Mazza
                                                           PETER J. MAZZA
17                                                         Assistant U.S. Attorney

18

19

20

21

22

23

24

25

26

27

28                                                                                    07CR3415-DMS
                                              21

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA |

UNITED STATES OF AMERICA,  )        Case No. 07-CR-3415-DMS
                           )
        Plaintiff,         )
                           )
    v.                     )
                           )        CERTIFICATE OF SERVICE
MARTIN MORALES             )
        LOZANO VARGAS (3), )
JESUS TRAPERO-ZAZUETA (4), )
ADAN MAGANA, JR. (5),      )
                           )
                           )
        Defendants.        )
_____)

IT IS HEREBY CERTIFIED THAT:

       I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

       I am not a party to the above-entitled action.  I have caused service of a Response to Defendants' Motion for Discovery, Leave to File Additional Motions, and Suppression Motions By Defendant Trapero-Zazueta on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

       1. Jeremy Warren, Esq.
       2. Robert Schlein, Esq.
       3. Norma Aguilar, Esq.
       4. Holly Hanover, Esq.
       5. Sylvia Baiz, Esq.

       I declare under penalty of perjury that the foregoing is true and correct.

       Executed on January 18, 2008.

                           s/ Peter J. Mazza
                           PETER J. MAZZA

07CR3415-DMS