KAREN P. HEWITT
United States Attorney
PETER J. MAZZA
Assistant United States Attorney
California Bar No. 239918
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone:  (619) 557-5528

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  07-CR-3415-DMS |
| | ) | |
| Plaintiff, | ) | DATE: June 6, 2008 |
| | ) | TIME:  1:30 p.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| MARTIN MORALES | ) | OPPOSITION TO DEFENDANT'S MOTIONS |
| LOZANO-VARGAS (3), | ) | TO: |
| | ) | |
| Defendant. | ) | (1) SUPPRESS STATEMENTS |
| | ) | (2) FILE DECLARATION LATE; and |
| | ) | (3) FILE FURTHER MOTIONS |
| | ) | |
| | ) | TOGETHER WITH A STATEMENT |
| | ) | OF FACTS AND A MEMORANDUM |
| | ) | OF POINTS AND AUTHORITIES |
| _____ | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

Karen P. Hewitt, United States Attorney, and Peter J. Mazza, Assistant United States Attorney, and

hereby files its response to Defendant Martin Morales Lozano-Vargas's motions to suppress

statements, file his declaration in support of his motion to suppress after the Court-imposed date,

and and to file additional motions.   Said response is based upon the files and records of this case,

together with the attached statement of facts and accompanying memorandum of points and

authorities.

//

//

//

1

## I

## STATEMENT OF THE CASE

### A.    THE CHARGE

On December 19, 2007, a grand jury sitting in the Southern District of California returned a one-count Indictment against Defendants, charging them with possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  On December 20, 2007, Defendant was arraigned on the Indictment.

### B.    STATUS OF DISCOVERY

On January 2, 2008, the Government produced approximately 120 pages of written discovery to all Defendants.  That same day, the Government produced an additional 12 pages to Defendant Lozano-Vargas.   The documents that have been produced constitute all discoverable material that the Government has to date, and includes, inter alia: (1)  investigative reports; (2) Defendant's criminal history; (3) documents seized from the rental vehicle; and (4) photographs taken throughout the investigation.

## II

## STATEMENT OF FACTS

During the day on December 8, 2007, Border Patrol agents were conducting routine surveillance duties at the Midway Campground, which is in the area of the Imperial Sand Dunes.  Throughout the course of the day, Border Patrol Agent Tyler Emblem observed activity at the Midway Campground that he felt was suspicious based on his training and experience.  Specifically, Agent Emblem observed several individuals camping in the area of a rental motor home that had positioned their other vehicles in a "V" shape, which effectively blocked the view into their camping area.  Agent Emblem also recognized one of the off-road vehicles parked in the area of this group as one that fit the description of a sand buggy that had previously been reported by citizens as a possible drug smuggling vehicle.  At approximately 11:30 a.m., Drug Enforcement Administration (DEA) Task Force Officer (TFO) Craig Moore and Bureau of Land Management

07CR3415-DMS

1    (BLM) Special Agent Clark established stationary surveillance of the suspicious campground.  As

2    agents conducted surveillance of the group throughout the afternoon, they noticed that several

3    individuals entered the camp and left shortly thereafter.  They further noticed several members of

4    the group going to the outhouse for extended periods of time.  Agents conducted surveillance of

5    the Defendants' campground from close range – approximately 30 yards –  throughout the day.

6          At approximately 8:10 p.m., agents observed one of the all terrain vehicles (ATVs)

7    associated with the group depart from the campground with its headlights off.  The ATV left in a

8    southerly direction toward the United States/Mexico international boundary that is approximately

9    one mile south of the campground.  At approximately 8:20 p.m., agents observed an individual

10   later identified as Defendant Trapero-Zazueta extinguish the campfire, while another individual

11   later identified as Defendant Lozano-Vargas left the campground with his headlights off.

12         At approximately 8:30 p.m., Defendant Lozano-Vargas returned to the campground on an

13   ATV with the headlights off.  Shortly thereafter, agents utilizing night-vision equipment, observed

14   several other individuals on ATVs driving from the south toward the campground without using

15   the headlights on their vehicles.  Agents observed that these ATVs also had large bundles attached

16   to them.  Based on these observations, and their individual training and experiences, agents

17   suspected that the group to be conducting narcotics-related activities.

18         At the campground, Ranger Swanson observed the ATVs unload the bundles onto a flatbed

19   trailer at the direction of Defendant Lozano-Vargas.  After the bundles were loaded onto the

20   flatbed trailer, the ATVs departed the campground with their headlights activated.  Ranger

21   Swanson then observed individuals later identified as Defendants Trapero-Zazueta, Lozano-

22   Vargas, and Christian Maria Rodriguez transferring the bundles from the flatbed trailer to the area

23   of the motor home.  The flatbed trailer was hooked up to the motor home.  During the transfer of

24   the bundles, agents noticed Defendant Magana appear to be serving as a lookout for the group.  He

25   would alternate between watching over the transfer of the bundles and look out in the direction of

26

27

28                                                  07CR3415-DMS

                              3

1  other campgrounds.  Once the bundles were removed from the trailer, Defendant Trapero-Zazueta
2  relit the campfire.

3       At approximately 11:50 p.m., agents approached the area of the motor home.  As they
4  neared, they made contact with Defendant Rodriguez who was seated in the driver's seat of the
5  motor home.  Defendant Rodriguez exited the motor home and informed agents that there were
6  more individuals still inside.  Agents and officers instructed all remaining individuals to exit the
7  motor home.  Only Defendants Trapero-Zazueta and Lozano-Vargas responded by exiting the
8  motor home.  Officers then called out a second time, and Defendant Magana exited.  Officers
9  called out a third time for remaining occupants to exit the motor home, and Defendant Heredia-
10  Vargas finally emerged from the motor home.  Fearing additional individuals may still be inside,
11  officers conducted a protective sweep of the motor home.

12       Upon entering the motor home, agents encountered an overwhelming odor of a masking
13  agent and marijuana.  As agents proceeded to sweep the rear area of the motor home, they noticed
14  in plain view, several large bundles in the shower area.  Agents noticed in plain view several
15  additional bundles stacked immediately next to the bed in the rear sleeping quarters.  The bundles
16  were approximately 2' x. 1.5' wide and approximately 10" deep.  They were painted black, and
17  wrapped in cellophane plastic and aluminum foil.  Based on their training and experiences, officers
18  and agents at the scene recognized these bundles to be consistent with those frequently used to
19  conceal narcotics.

20       Once the agents exited the motor home, Defendant Rodriguez spontaneously stated that her
21  mother had rented the motor home and she wanted to know "what was going on."  Subsequent
22  checks revealed the motor home was rented to Defendant Heredia-Vargas on December 7, 2007,
23  in Indio, California.  The five individuals were taken into custody.

24       A subsequent search of the vehicle revealed 47 bundles that contained approximately
25  382.08 kilograms (842.40 pounds).  Field tests revealed that the bundles contained marijuana.

26

27

07CR3415-DMS

28

On December 9, 2007, at approximately 12:50 a.m., Agent Butler informed Defendant Lozano-Vargas of his Miranda rights in English from a pre-printed DEA form. Defendant Lozano-Vargas agreed to answer questions without an attorney present. He stated that the other occupants of the motor home arrived at the campground on Friday night, December 7, 2007. Defendant Lozano-Vargas admitted that he was watching for Border Patrol agents and other law enforcement, and that when he would see law enforcement, he would notify his friends. He stated that he expected to be paid approximately $200 over the weekend. Defendant Lozano-Vargas further informed agents that he had traveled to Indio, California with Defendant Trapero-Zazueta in the black truck, but that he did not know Defendant Trapero-Zazueta well. Defendant Lozano-Vargas stated that he came to the sand dunes at the invitation of Defendant Rodriguez. He stated that he did not know the individuals who had arrived at the campground earlier in the evening on the ATVs. He further denied knowing there was marijuana in the motor home. Finally, Defendant Lozano-Vargas informed agents that he did not wish to answer any more questions without the presence of his grandmother, Defendant Vargas. Agents did not ask any more questions.

### III

### POINTS AND AUTHORITIES

**A.**    **DEFENDANT'S MOTIONS TO SUPPRESS SHOULD BE DENIED**

   **1.**    **Defendant's Post-Arrest Statements Were Voluntary**

Defendant asserts that his post-arrest statements were involuntary for a variety of reasons. A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"; "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"). Whether there has been an intelligent Miranda waiver

07CR3415-DMS

1    depends upon the particular facts in the case, including but not limited to the background,

2    experience, and conduct of the accused.  Brewer v. Williams, 430 U.S. 387, 403 (1977); United

3    States v. Rodriguez-Gastelum, 569 F.2d 482, 483 (9th Cir.), cert. denied, 436 U.S. 919 (1978).  A

4    statement is considered "voluntary" if the totality of the surrounding circumstances indicates it was

5    the product of free and rational choice.  Columbe v. Connecticut, 367 U.S. 568 (1961); see also

6    Moran v. Burbine, 475 U.S. 412, 421 (1986) (recognizing that the waiver must be free from

7    intimidation, coercion, or deception).  The inquiry is "whether a defendant's will was overborne"

8    by the circumstances surrounding the statements.  Schneckloth v. Bustamonte, 412 U.S. 218, 226

9    (1973).  The voluntariness of a Fifth Amendment waiver depends on the absence of police

10   overreaching, not on "free choice" in any broader sense of the word.  Connelly, 479 U.S. 157.  In

11   examining the totality of the circumstances, the court must examine the personal characteristics

12   of the defendant, together with the details of the interrogation.  Schneckloth, 412 U.S. at 226

13   (stating that no one particular factor is dispositive; for example, the Government does not need to

14   demonstrate that police informed the suspect of his right to refuse to answer questions).  Relevant

15   personal characteristics include a defendant's past experience with law enforcement, Lynumn v.

16   Illinois, 372 U.S. 528, 534 (1963), age, intelligence, educational level, knowledge of rights, and

17   the defendant's physical, mental, or emotional condition.  Brewer, 430 U.S. at 403.

18        Here, DEA Special Agent Jeffrey Butler advised Defendant of his Miranda rights on

19   December 9, 2007, at approximately 12:50 a.m.  Agent Butler read Defendant his rights pursuant

20   to a standardized Miranda warning form, DEA Form 13a.  Defendant acknowledged that he

21   understood his rights.  In response to Agent Butler's question of whether he was willing to answer

22   questions despite his Constitutional rights, Defendant Lozano-Vargas responded "sure."  Agent

23   Butler then proceeded to question him.  His statements were knowing, intelligent, and voluntary.

24   See United States v. Washington, 431 U.S. 181, 188 (1977) ("Indeed, it seems self-evident that one

25   who is told he is free to refuse to answer questions is in a curious posture to later complain that his

26   answers were compelled.")  Defendant had several prior law enforcement contacts prior to the

27

28

07CR3415-DMS

instant offense, including three prior convictions, which indicate that Defendant had a heightened awareness of his Constitutional rights at the time of arrest.  See  Lynumn, 372 U.S. at 534. Furthermore, while Defendant claims that he was forced to wait outside for approximately one hour, agents did not even attempt to clear the motor home for the first time until 11:50 p.m. and did not conduct their first interview until 12:15 a.m.  Nor is there any indication that Defendant was under the influence of alcohol or narcotics.  See United States v. Ritter, 456 F.2d 178, 179 (10th Cir. 1972) (holding that defendant's emotional instability, psychiatric treatment, fear of police, and claims of being cold and hungry did not make his Miranda waiver involuntary). Finally, even accepting Defendant's claims that agents implied that his grandmother would be held responsible for the crime – which the Government does not concede – such actions would not be of the variety that would cause Defendant's will to be "overborne by the circumstances surrounding" his statement.  Dickerson v. United States, 530 U.S. 428, 434 (2000); Frazier v. Cupp, 394 U.S. 731 (1974) (holding that even where police falsely told a defendant that a coconspirator had confessed, the defendant's statement was not involuntary).  Such a statement, if made, would have been an entirely correct statement of the situation, nor would it have been improperly coercive.  See United States v. Boyce, 594 F.2d 1246 (9th Cir. 1979) (holding that police officer's appeals to defendant's loyalty to his family did not render the defendant's confession involuntary); United States v. Johnson, 351 F.3d 254 (6th Cir. 2003) (holding that threat to arrest a third party does not render a confession involuntary where there is probable cause to arrest that third party).  Even so, to the extent the Court would find such statements inappropriate, such "conduct is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them."  Moran, 475 U.S. at 424 (holding that police did not violate defendant's Miranda rights where they purposely did not inform him of his attorney's attempt to contact him). Defendant was entirely free from coercion, duress, or trickery in deciding to speak with Agent Butler after learning his Miranda rights.  Indeed, all questioning ceased once Defendant Lozano-

1    Vargas informed Agent Butler that he did not wish to answer any more questions outside the

2    presence of his grandmother.  Accordingly, the Court should deny his motion to suppress his

3    statements.

4    **B.**      **MOTION TO FILE DEFENDANT'S DECLARATION LATE**

5          The United States does not oppose the Court granting Defendant's motion to accept his

6    declaration after the Court-imposed deadline.

7    **C.**      **LEAVE TO FILE ADDITIONAL MOTIONS**

8          The United States does not oppose Defendant's request for leave to file further motions as

9    long as the order grants reciprocal leave to file additional motions and that any new motions are

10   based on newly discovered information.

11                                   **IV**

12                              **CONCLUSION**

13         For the foregoing reasons, the Government requests that Defendant's motions be denied

14   where indicated.

15         DATED: May 29, 2008.

16                                                     Respectfully submitted,

17                                                     KAREN P. HEWITT
                                                      United States Attorney
18

19                                                     s/ Peter J. Mazza
                                                      PETER J. MAZZA
20                                                     Assistant U.S. Attorney

21

22

23

24

25

26

27

28                                   8

07CR3415-DMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          )          Case No. 07-CR-3415-DMS
                                   )
              Plaintiff,           )
                                   )
       v.                          )
                                   )          CERTIFICATE OF SERVICE
MARTIN MORALES                     )
       LOZANO-VARGAS (3),          )
                                   )
                                   )
              Defendant.           )
_____   )

IT IS HEREBY CERTIFIED THAT:

    I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action.  I have caused service of a Response to Defendants' Motion for Discovery, Leave to File Additional Motions, and Suppression Motions By Defendant Trapero-Zazueta on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1. Norma Aguilar, Esq.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on May 29, 2008.

                    s/ Peter J. Mazza
                    PETER J. MAZZA

07CR3415-DMS