1  KAREN P. HEWITT
   United States Attorney
2  PETER J. MAZZA
   Assistant U.S. Attorney
3  California State Bar No. 239918
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-5528

6  Attorneys for Plaintiff
   United States of America

7

8               UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,      ) Case No.  07CR3415-DMS
                                  )
11             Plaintiff,         ) DATE:      September 25, 2008
                                  ) TIME:      9:30 a.m.
12             v.                 )
                                  ) **UNITED STATES' MOTIONS IN LIMINE**
13 MARGARITA HEREDIA-VARGAS (2),  ) **TO:**
   MARTIN LOZANO-VARGAS (3),      )
14                                ) **(A)   PROHIBIT REFERENCE TO**
             Defendants.          ) **      PUNISHMENT, ETC.;**
15                                ) **(B)   LIMIT CHARACTER EVIDENCE;**
                                  ) **(C)   PRECLUDE EVIDENCE OF**
16                                ) **      DURESS AND NECESSITY;**
                                  ) **(D)   ADMIT EXPERT TESTIMONY**
17                                ) **      BY THE UNITED STATES;**
                                  ) **(E)   RENEW ITS MOTION FOR**
18                                ) **      RECIPROCAL DISCOVERY;**
                                  )
19                                )
                                  ) **TOGETHER WITH STATEMENT OF FACTS,**
20                                ) **MEMORANDUM   OF   POINTS   AND**
                                  ) **AUTHORITIES.**
21 _____ )

22

23      COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and

24 through its counsel, KAREN P. HEWITT, United States Attorney, and

25 Peter J. Mazza, Assistant United States Attorney, and hereby files its

26 Motions in Limine.  These motions are based upon the files and records

27 of the case together with the attached statement of facts and

28 memorandum of points and authorities.

I

**STATEMENT OF THE CASE**

On December 19, 2007, a grand jury sitting in the Southern District of California returned a one-count Indictment against Defendants Margarita Heredia-Vargas and Martin Lozano-Vargas (collectively "Defendants"), charging them with possession of 382.9 kilograms (842.4 pounds) of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  On December 20, 2007, Defendants were arraigned on the Indictment.

On June 12, 2008, the Court held an evidentiary hearing regarding motions to suppress filed by Defendants.  The Court denied the motion to suppress evidence resulting from the search, denied the motion to suppress the fruits of the search, denied the motion to suppress the statements made by Defendant Heredia-Vargas, and granted the motion to suppress the statements made by Defendant Lozano-Vargas.

On July 25, 2008, a grand jury returned a two-count Superseding Indictment charging Defendants with possession of marijuana with the intent to distribute, and aiding and abetting, in violation of 18 U.S.C. § 2, and conspiracy to distribute 100 kilograms and more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  On July 31, 2008, Defendant Lozano-Vargas was arraigned on the Superseding Indictment.  On August 7, 2008, Defendant Heredia-Vargas was arraigned on the Superseding Indictment.

II

**STATEMENT OF FACTS**

**A.    MIDWAY CAMPGROUND**

During the day on December 8, 2007, Border Patrol agents conducted routine surveillance duties at the Midway Campground, which

07CR3415-DMS

is in the area of the Imperial Sand Dunes.  Border Patrol Agent Tyler Emblem observed activity at the Midway Campground that he felt was suspicious based on his training and experience.  Specifically, Agent Emblem observed several individuals camping in the area of a rental motor home that had positioned their other vehicles in a "V" shape, which effectively blocked the view into their camping area.  Agent Emblem also recognized one of the off-road vehicles parked in the area of this group as one that fit the description of a sand buggy that had previously been reported by citizens as a possible drug smuggling vehicle.  At approximately 11:30 a.m., Drug Enforcement Administration (DEA) Task Force Officer (TFO) Craig Moore and Bureau of Land Management (BLM) Special Agent Clark Beene established stationary surveillance in the campground.  They noticed that several individuals entered the camp and left shortly thereafter.  They further noticed several members of the group going to the outhouse for extended periods of time.  Agents conducted surveillance of the Defendants' campground from close range – approximately 30 yards –  throughout the day.

At approximately 8:10 p.m., agents observed one of the all terrain vehicles (ATVs) associated with the group depart from the campground with its headlights off.  The ATV left in a southerly direction toward the United States/Mexico international boundary that is approximately one mile south of the campground.  At approximately 8:20 p.m., agents observed an individual later identified as Defendant Trapero-Zazueta extinguish the campfire, while another individual later identified as Defendant Lozano-Vargas left the campground with his headlights off.

//

07CR3415-DMS

At approximately 8:30 p.m., Defendant Lozano-Vargas returned to the campground on an ATV with the headlights off.  Shortly thereafter, agents utilizing night-vision equipment, observed several other individuals on ATVs driving from the south toward the campground without using the headlights on their vehicles.  Agents observed that these ATVs also had large bundles attached to them.  Based on these observations, and their individual training and experiences, agents suspected that the group to be conducting narcotics-related activities.

At the campground, Ranger Swanson observed the ATVs unload the bundles onto a flatbed trailer at the direction of Defendant Lozano-Vargas.  After the bundles were loaded onto the flatbed trailer, the ATVs departed the campground with their headlights activated.  Ranger Swanson then observed individuals later identified as Defendants Trapero-Zazueta, Lozano-Vargas, and Christian Maria Rodriguez transferring the bundles from the flatbed trailer to the area of the motor home.  The flatbed trailer was hooked up to the motor home. During the transfer of the bundles, agents noticed Defendant Magana appear to be serving as a lookout for the group.  He would alternate between watching over the transfer of the bundles and look out in the direction of other campgrounds.  Once the bundles were removed from the trailer, Defendant Trapero-Zazueta relit the campfire.

At approximately 11:50 p.m., agents approached the area of the motor home.  As they neared, they made contact with Defendant Rodriguez who was seated in the driver's seat of the motor home. Defendant Rodriguez exited the motor home and informed agents that there were more individuals still inside.  Agents and officers instructed all remaining individuals to exit the motor home.  Only

4

1  Defendants Trapero-Zazueta and Lozano-Vargas responded by exiting the
2  motor home.  Officers then called out a second time, and Defendant
3  Magana exited.  Officers called out a third time for remaining
4  occupants to exit the motor home, and Defendant Heredia-Vargas finally
5  emerged from the motor home.  Fearing additional individuals may still
6  be inside, officers conducted a protective sweep of the motor home.

7       Upon entering the motor home, agents encountered an overwhelming
8  odor of a masking agent and marijuana.  As agents proceeded to sweep
9  the rear area of the motor home, they noticed in plain view, several
10 large bundles in the shower area.  Agents noticed in plain view
11 several additional bundles stacked immediately next to the bed in the
12 rear sleeping quarters.  The bundles were approximately 2' x. 1.5'
13 wide and approximately 10" deep.  They were painted black, and wrapped
14 in cellophane plastic and aluminum foil.  Based on their training and
15 experiences, officers and agents at the scene recognized these bundles
16 to be consistent with those frequently used to conceal narcotics.

17      Once the agents exited the motor home, Defendant Rodriguez
18 spontaneously stated that her mother had rented the motor home and she
19 wanted to know "what was going on."  Subsequent checks revealed the
20 motor home was rented to Defendant Heredia-Vargas on December 7, 2007,
21 in Indio, California.  The five individuals were taken into custody.

22      A subsequent search of the vehicle revealed 47 bundles that
23 contained approximately 382.08 kilograms (842.40 pounds).  Field tests
24 revealed that the bundles contained marijuana.

25 **B.**   **POST-ARREST STATEMENTS BY DEFENDANT HEREDIA-VARGAS**

26      At approximately 12:37 a.m., Federal Bureau of Investigation
27 Special Agent Ronald Ribail advised Defendant Heredia-Vargas of her
28 Miranda rights as set forth on a standard Advice of Rights form used

by the FBI.  Defendant Heredia-Vargas waived her <u>Miranda</u> rights and agreed to make a statement without an attorney present.  Defendant Heredia-Vargas stated that she rented the motor home on December 7, 2007 in Indio, California.  She said her grandson, Defendant Lozano-Vargas, and his friend, "Adam," traveled with her to rent the vehicle. Defendant Vargas stated that they were being followed by an unidentified male driving a black truck.  She stated that after renting the motor home, they drove it to Calexico, California where they met with two other unidentified males who helped her grandson hook up the flatbed trailer to the motor home.  They then drove to the campground.  She said that she slept on and off throughout the day on Saturday, December 8, 2007.  She stated that when law enforcement arrived at their campground, she was sleeping on the couch near the door of the motor home.  She stated that she had moved around the motor home for much of the day and night, and specifically mentioned that she used the bathroom at approximately 9:00 p.m.  During her post-arrest interview, Defendant Heredia-Vargas acknowledged the presence of the bundles being off-loaded from the motor home, but denied knowing how they came to be located in the motor home. Defendant Heredia-Vargas denied observing any marijuana or other large packages in the motor home at any time.  She noted that the motor home did not contain marijuana when she rented it on Friday, December 7, 2007.

//
//
//
//
//

07CR3415-DMS

# III

## MOTIONS IN LIMINE

**A.    THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

Evidence of, and thus argument referring to, Defendants' health, age, finances, education and potential punishment is inadmissible and improper.  "Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).  Reference to Defendants' health, age, finances, education and potential punishment may be relevant at sentencing.  However, in a drug conspiracy trial, such reference is not only irrelevant and unfairly prejudicial, but an attempt for sympathy and jury nullification, as well.

Similarly, it is inappropriate for a jury to be informed of the consequences of their verdict.  <u>United States v. Frank</u>, 956 F.2d 872, 879 (9th Cir. 1991).  Any mention of penalty or felony status is irrelevant as it sheds no light on the Defendants' guilt or innocence.  Therefore, the United States respectfully requests this Court to preclude any mention of possible punishment, age health, or finances of either defendant at any point in this trial.

**B.    THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

The United States anticipates that Defendants may attempt to introduce testimony regarding Defendants' specific acts of prior good conduct.  This would be improper, and thus should be prohibited.  Testimony as to multiple instances of good conduct violates Federal

7

Rule of Evidence 405(a).  <u>United States v. Barry</u>, 841 F.2d 1400, 1403

(9th Cir. 1987);  <u>Government of Virgin Islands v. Grant</u>, 775 F.2d 508,

512 (3d Cir. 1985).

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness cannot offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant.  <u>United States v. Giese</u>, 597 F.2d 1170 (9th Cir. 1979) <u>cert. denied</u>, 444 U.S. 972 (1979) (character witnesses must restrict their direct testimony to appraisals of defendant's reputation); <u>United States v. Hedgecorth</u>, 873 F.2d 1307 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible").

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible.  The appellate court, however, has held that asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a).  See <u>United States v. Diaz</u>, 961 F.2d 1417 (9th Cir. 1992) (impermissible to ask character witness about defendant's propensity to engage in large scale drug dealing).

Thus, the United States hereby moves <u>in limine</u> to prohibit Defendants from introducing testimony from any character witness about

(a) a specific instance of Defendant's conduct, and (b) Defendants' propensity to be involved in smuggling.

**C.    THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

A district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, a defendant must establish a prima facie case that:

(1)    Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2)    Defendant had a well-grounded fear that the threat would be carried out; and

(3)    There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 118 S. Ct. 86 (1997). If the defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden or confuse the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1)    that s/he was faced with a choice of evils and chose the lesser evil;

(2)    that s/he acted to prevent imminent harm;

(3)    that s/he reasonably anticipated a causal relationship between his/her conduct and the harm to be avoided; and

9

1    (4)  that there was no other legal alternatives to violating the

2         law.

3  <u>See</u> <u>Schoon</u>, 971 F.2d at 195; <u>United States v. Dorrell</u>, 758 F.2d 427,

4  430-31 (9th Cir. 1985).  A court may preclude invocation of the

5  defense if "proof is deficient with regard to any of the four

6  elements."  <u>See</u> <u>Schoon</u>, 971 F.2d at 195.

7      A pretrial motion is an appropriate means of testing the

8  sufficiency of a proffered defense and precluding evidence thereof if

9  the defense is found to be insufficient.  Fed. R. Crim. P. 12(b) ("Any

10 defense, objection, or request which is capable of determination

11 without the trial of the general issue may be raised before trial by

12 motion.");  <u>United States v. Peltier</u>, 693 F.2d 96, 97-98 (9th Cir.

13 1982) <u>(per curiam)</u>; <u>United States v. Shapiro</u>, 669 F.2d 593, 596-97

14 (9th Cir. 1982); <u>see</u> <u>also</u> Fed. R. Crim. P. 12(e).  Courts have

15 specifically approved the pretrial exclusion of evidence relating to

16 a legally insufficient duress defense on numerous occasions.  <u>See</u>

17 <u>United States v. Bailey</u>, 444 U.S. 394 (1980) (addressing duress);

18 <u>Moreno</u>, 102 F.3d at 997 (addressing duress).

19     The United States hereby moves for an evidentiary ruling

20 precluding defense counsel from making any comments during the opening

21 statement or during their cases-in-chief that relate to any purported

22 defense of "duress" or "coercion" or "necessity" unless the Defendant

23 makes a prima facie showing satisfying each element of the defense.

24 The United States respectfully requests that the Court rule on this

25 issue prior to opening statements to avoid the prejudice, confusion,

26 and invitation for jury nullification that would result from such

27 comments.

28 //

**D.**    **EXPERT TESTIMONY FOR THE UNITED STATES SHOULD BE ADMITTED**

    **1.**    **Introduction**

The United States moves this Court to admit expert testimony regarding the modus operandi/roles of drug organization members, the value of the controlled substance involved in this case, that 383 kilograms of marijuana is an amount suitable for distribution, and that the substance seized was, in fact, marijuana. The United States intends to call a special agent with the United States Border Patrol as an expert in narcotics trafficking, and specifically in the Imperial Sand Dunes area of Imperial County. The United States intends to call an expert from the DEA to testify regarding the value of illicit narcotics, and distributable quantities of narcotics. Finally, absent a stipulation from Defendants, the United States will call a forensic chemist from the Drug Enforcement Administration as an expert in identifying the narcotic. The Court should admit such testimony as relevant and reliable.

    **2.**    **Standard of Admissibility**

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial, and has "broad latitude" in determining the relevance and reliability of such testimony. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 142 (1999).

Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge. <u>United States v. Alonso</u>, 48 F.3d 1536,

1  1539 (9th Cir. 1995); <u>United States v. Lennick</u>, 18 F.3d 814, 821 (9th

2  Cir. 1994).  The district court may consider the <u>Daubert</u> test or any

3  other factors in addressing relevant reliability concerns regarding

4  expert testimony.  <u>Kumho</u>, 526 U.S. at 149-50 (noting that "there are

5  many different kinds of experts, and many different kinds of

6  expertise," including, "experts in drug terms, handwriting analysis,

7  [and] criminal modus operandi, . . . ").

8      The expert's opinion may be based on hearsay or facts not in

9  evidence when the facts or data relied upon are of the type reasonably

10 relied upon by experts in the field.  Fed. R. Evid. 703; <u>see</u>, <u>e.g.</u>,

11 <u>United States v. Gil</u>, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating

12 "[w]e have consistently held that government agents or similar persons

13 may testify as to the general practices of criminals to establish the

14 defendants' modus operandi") (internal quotations omitted); <u>see also</u>

15 <u>United States v. Hankey</u>, 203 F.3d 1160, 1168-70 (9th Cir. 2000)

16 (affirming district court's admission of gang expert testimony that

17 gang members would be subject to violent retribution if they testified

18 against another gang member).    An expert may provide opinion

19 testimony even if the testimony embraces an ultimate issue to be

20 decided by the trier-of-fact.  Fed. R. Evid. 704; <u>United States v.</u>

21 <u>Plunk</u>, 153 F.3d 1011, 1018 (9th Cir. 1998).  An experienced narcotics

22 agent may testify in the form of an opinion even if that opinion is

23 based in part on information from other agents familiar with the

24 issue.  <u>United States v. Golden</u>, 532 F.2d 1244, 1248 (9th Cir. 1976).

25 The proposed expert testimony "alerts [the jury] to the possibility

26 that combinations of seemingly innocuous events may indicate criminal

27 behavior."  <u>United States v. Johnson</u>, 735 F.2d 1200, 1202 (9th Cir.

28 1984).

07CR3415-DMS

**3.    Evidence Regarding Modus Operandi of Drug Couriers**

The United States moves to present expert testimony regarding the modus operandi of drug smuggling organizations and members, and particularly regarding the actions of those organizations and individuals that operate in the Imperial Sand Dunes area of Imperial County.  Such testimony is proper to help the jury understand the evidence in the case, to put that evidence in a relevant context, and to ensure the jury does not decide the case in a vacuum.  The evidence is relevant to the question whether Defendants knew of the packages in the vehicle, knew that the packages in the vehicle were drugs, and whether they knew that the purpose of the trip was to smuggle drugs.

The Ninth Circuit has consistently held that, in cases where a conspiracy has been charged, expert evidence regarding drug courier profile and "structure" evidence is admissible.  United States v. Klimavicius-Viloria, 144 F.3d 1249, 1259-60 (9th Cir. 1998); United States v. Kearns, 61 F.3d 1422, 1427 (9th Cir. 1995); see also United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2000), as amended 246 F.3d 1150 (9th Cir. 2001) (holding that district court erred in admitting "structure" evidence where no conspiracy was charged and no showing was made by the United States linking the defendant to a larger drug organization); United States v. Pineda-Torres, 287 F.3d 860, 863 (9th Cir. 2002) (same).

Evidence about the drug-trafficking business, as well as admission of evidence about the modus operandi of drug couriers, is consistent with well-established law allowing expert testimony about a criminal organization's operations as relevant to a defendant's knowledge.  See United States v. Alonso, 48 F.3d 1536, 1540 (9th Cir. 1995) (holding that law-enforcement officers may testify regarding

"typical methods and techniques employed in an area of criminal activity," and explain how defendant's conduct conforms to typical methods) (quotation omitted); United States v. Gil, 58 F.3d 1414, 1421-22 (9 th Cir. 1995) (admitting expert testimony regarding general practice of drug traffickers); United States v. Bosch, 951 F.2d 1546, 1549-50 (9th Cir. 1991) (holding that agent with expertise in narcotics investigations may aid jury in understanding defendant's role in charged offense); United States v. Jaramillo-Suarez, 950 F.2d 1378, 1384 (9th Cir. 1991) (holding that expert properly testified regarding drug organization's use of pay-owe sheets to keep track of customers); United States v. Guzman, 849 F.2d 447, 448 (9th Cir. 1988) (admitting expert agent's testimony that switching cars is common tactic used by narcotics traffickers); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir. 1987) (permitting expert testimony that members of narcotics rings play many different roles, including street salesmen, money collectors, and lookouts); United States v. Stewart, 770 F.2d 825, 831 (9th Cir. 1985) (allowing expert testimony that defendant engaged in counter-surveillance while driving on one occasion and was likely going to distribute drugs on another); United States v. Maher, 645 F.2d 780, 783 (9th Cir. 1981) (allowing expert testimony that a defendant's actions were consistent with the modus operandi of persons transporting drugs).

Given the case law above, this Court should allow expert testimony about the role and modus operandi of drug couriers. This Court should admit the requested evidence for the foregoing reasons and to avoid the risk that the jury may not understand how Defendant's arguably innocuous acts comport with drug smuggling.

//

**4.    Evidence Regarding Value of the Controlled Substance**

The United States moves for a narcotics expert to testify regarding the quantity of controlled substance found in the rental vehicle occupied by Defendants, and the street and wholesale value of the controlled substance both in the United States and in Mexico.  The Ninth Circuit permits the use of such expert testimony.

In United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994), the defendant was charged with importation of heroin.  At trial, the United States introduced expert testimony regarding the street value of the heroin, assuming the drugs had been repeatedly cut and sold on the street.  The Ninth Circuit held that admission of such testimony was proper and that counsel can argue reasonable inferences from the evidence.  Id. at 812; see also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity and quality of narcotics is relevant to demonstrate defendant's knowledge of the drugs and intent to distribute them); United States v. Kearney, 560 F.2d 1358, 1369 (9th Cir. 1977) (street value of narcotics relevant to demonstrate defendant's knowledge).

The testimony of the United States' expert regarding the quantity and value of the controlled substance seized is circumstantial evidence of Defendants' knowledge, intent, and participation in the drug smuggling venture.  Knowledge and intent are essential elements of the offenses charged.  The value testimony will tend to show that Defendants knowingly participated in the venture, and possessed the illegal drugs with the intention to further distribute them.  Most important, such evidence will also help the jury understand the significance of the drugs' value, and the facts at issue in this case.  Thus, the Court should admit the testimony.

**5.    383.08 Kilograms of Marijuana is an Amount for Distribution**

The United States intends to introduce expert testimony that 383.08 kilograms of marijuana is an amount for distribution, not for personal use. Such evidence is relevant and admissible. <u>Kinsey</u>, 843 F.2d 383, 387-88 (9 th Cir. 1988), <u>overruled on other grounds</u>, <u>United States v. Nordby</u>, 225 F.3d 1053 (9th Cir. 2000). The United States intends to offer the narcotics expert's testimony to show that Defendants intended to distribute the marijuana found in their vehicle. Such testimony is relevant to the issues of knowledge and intent to distribute; it is particularly significant to the jury's understanding of the facts of the case. Accordingly, the Court should allow such evidence to enable the United States to prove essential elements of the charged offenses.

**6.    Expert Testimony that the Substance Seized is Marijuana**

Absent a stipulation by Defendant, the United States intends to call a forensic chemist from the Drug Enforcement Administration to testify that the substance seized from Defendants' vehicle is marijuana, a Schedule I controlled substance. The United States anticipates that the forensic chemist will testify that the chemist performed various tests on the substance seized from the vehicle, and that these tests all indicated that the substance is, in fact, marijuana. This expert will base this opinion on the chemist's background, education and experience, along with the chemist's knowledge and use of accepted scientific methods of testing. This testimony bears directly on an element of the charged offense -- that marijuana is a prohibited drug.

//

//

16

E.    **UNITED STATES RENEWED MOTION FOR RECIPROCAL DISCOVERY**

As of the date of the preparation of these motions, Defendant has produced no reciprocal discovery including photographs Defendant intends to introduce at trial.  The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant.  Defendant has not provided the United States with any documents, photographs, or statements.

**IV**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that its Motions in Limine be granted.

DATED: September 11, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*s/ Peter J. Mazza*
PETER J. MAZZA
Assistant U.S. Attorney

17

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | Case No.   07CR3415-DMS |
|                     ) | |
|               Plaintiff,    ) | |
|     v.                      ) | **CERTIFICATE OF SERVICE** |
|                          ) | |
| MARGARITA HEREDIA-VARGAS (2), ) | |
| MARTIN LOZANO-VARGAS (3),     ) | |
|                          ) | |
|              Defendants.   ) | |
|                          ) | |
| _____ ) | |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Motions in Limine, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1.   Norma Aguilar, Esq.
    2.   Frederick Carroll, Esq.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2008.

                       *s/ Peter J. Mazza*
                       PETER J. MAZZA